# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TIMOTHY MCDOUGALD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:17CV279 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Timothy McDougald, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 12; see also Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

### I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging an onset date of January 16, 2012. (Tr. 160-66.) Upon denial of that application initially (Tr. 73-83, 96-99) and on reconsideration (Tr. 84-95, 103-10), Plaintiff requested a hearing de novo before an Administrative Law

Judge ("ALJ") (Tr. 111). Plaintiff, his non-attorney representative, and a vocational expert ("VE") attended the hearing. (Tr. 33-72.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 13-27.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 6-12, 299-300), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] last met the insured status requirements of the [] Act on September 30, 2014.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of January 16, 2012 through his date last insured of September 30, 2014.

3. Through the date last insured, [Plaintiff] had the following severe impairments: morbid obesity; status-post left lower extremity fracture with residuals; reflex sympathetic dystrophy (RSD)/complex regional pain syndrome (CRPS); gout/arthrolithiasis; plantar fasciitis; lumbago; hypertension.

. . .

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work . . ., with the following provisos: [Plaintiff] is able to frequently push, pull, operate hand controls, handle, finger, and/or feel bilaterally. He can frequently use his lower extremities for pushing,

2

pulling, and/or operating foot controls. [Plaintiff] can occasionally climb ramps and stairs, balance, stoop, kneel, and/or crouch. He cannot climb ladders, ropes, scaffolds, or crawl. [Plaintiff] must avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. He requires the use of an assistive device, such as a cane, for ambulation only.

. . .

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the [] Act, at any time from January 16, 2012, the alleged onset date, through September 30, 2014, the date last insured.

(Tr. 18-26 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## **A. Standard of Review**

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

4

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B. Assignment of Error

In Plaintiff's sole assignment of error, he contends that "[t]he ALJ failed to provide a logical bridge between the evidence and his RFC assessment regarding the limiting effects of Plaintiff's gout." (Docket Entry 11 at 4 (bold font and single-spacing omitted).) In particular, Plaintiff faults the ALJ for not including in the RFC Plaintiff's alleged limitations due to gout, such as an inability to wear shoes or pick up objects, and a need to elevate his feet three times per day. (Id. at 4-5.) According to Plaintiff, "the ALJ provided a rote recitation of the medical evidence pertaining to [Plaintiff's] joint deformities and RSD as well as his gout," but failed to "explain how th[o]se findings translate[d] into the RFC." (Id. at 5 (citing Tr. 22-24).) Plaintiff additionally maintains that "the ALJ simply noting that a worker's compensation examiner felt that [Plaintiff] may not have given his best effort during testing after his foot fracture does not suffice for a function by function assessment of [Plaintiff's] ability to be on his feet or his need to elevate his legs during a gout attack." (Id. at 7 (citing Green v. Berryhill, No. 1:15-cv-273-RJC, 2017 WL 1206014, at *7 (W.D.N.C. Mar. 30, 2017) (unpublished)).) Plaintiff contends that "the ALJ's lack of explanation regarding [Plaintiff's] limitations due to gout was very harmful" (id. at 7-8), because the VE "testified that if [Plaintiff] were to miss more than one day per month or had to

8

elevate his legs during the workday, he would be unemployable" (id. at 6 (citing Tr. 66, 71)). Plaintiff's contentions miss the mark.

RFC measures the most a claimant can do despite any physical and mental limitations. See Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). Moreover, an ALJ need only "adopt credibly established limitations when formulating the RFC." Fuerst v. Colvin, No. 1:15CV1054, 2016 WL 5957602, at *9 n.13 (M.D.N.C. Oct. 13, 2016) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Nov. 15, 2016) (Eagles, J.); Bryant v. Colvin, No. 3:13-CV-349-JAG, 2014 WL 896983, at *12 (E.D. Va. Mar. 6, 2014) (unpublished) (district judge adopting recommendation of magistrate judge) (noting ALJ must "only . . . include those limitations that

9

the ALJ considers credibly established"). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

As an initial matter, the ALJ did not err by failing to specifically include in the RFC Plaintiff's alleged limitations due to gout, including an inability to wear shoes, difficulty holding or picking up objects, and a need to elevate his feet for fifteen minutes three times per day. (See Docket Entry 11 at 4-5; see also Tr. 44, 46, 52.) The ALJ discussed Plaintiff's allegations regarding those gout-related limitations, but concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely persuasive of disability, for the reasons explained in this decision." (Tr. 21.)[5] Furthermore, the ALJ's decision makes clear that he considered, and rejected, Plaintiff's allegation that his gout symptoms required him to elevate his legs to chair level more often than standard breaks would allow. The ALJ posed a hypothetical question to the VE which included the requirement that Plaintiff

---

[5] Applicable to ALJ decisions on or after March 28, 2016, the SSA superceded Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p") with Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." SSR 16-3p, 2017 WL 5180304, at *1. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. As the ALJ's decision in this case pre-dates the effective date of SSR 16-3p (see Tr. 27), this Recommendation will apply SSR 96-7p to the ALJ's analysis of Plaintiff's subjective complaints.

elevate his feet to chair level outside of the time for normal breaks (see Tr. 66-67), but noted in the decision that, although "various hypothetical questions were posed to the [VE] by the [ALJ] . . ., [Plaintiff's] RFC reflect[ed] the actual limitations supported by the weight of the evidence, for the reasons explained throughout th[e] decision" (Tr. 20 n.3).

Additionally, contrary to Plaintiff's contention (see Docket Entry 11 at 7), the ALJ did not, in discounting Plaintiff's symptom reporting, rely solely upon his observations that Plaintiff's "Functional Capacity Evaluation (FCE) was 'inconclusive,'" and/or that the FCE "quoted [Plaintiff] as 'saying he [was] not motivated for work conditioning, because it [might] damage his disability case'" (Tr. 25; see also Tr. 561). The ALJ also discussed Plaintiff's statements regarding his gout pain (see Tr. 21), Plaintiff's medical history and objective medical evidence of Plaintiff's gout pain (see Tr. 23, 24), as well as treatments Plaintiff underwent to alleviate his gout pain (see id.), which complied, in material part, with authority from the United States Court of Appeals for the Fourth Circuit regarding the evaluation of subjective complaints. See Craig, 76 F.3d at 595 (holding that ALJ must consider, in making part two finding, "the claimant's statements about h[is] pain, . . . the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle

11

spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it" (internal citations and quotation marks omitted)).[6]

Moreover, the ALJ sufficiently evaluated the limiting effects of Plaintiff's gout and explained the basis for the RFC determination. (See generally Tr. 20-25). Earlier in the SEP, the ALJ expressly found Plaintiff's gout a severe impairment at step two (see Tr. 18), but deemed it insufficiently severe to meet a listing at step three (see Tr. 19-20). The ALJ then provided a thorough and detailed summary of the medical evidence of record (see Tr. 21-25), including the following observations relevant to Plaintiff's allegations regarding gout:

---

[6] Although not specifically raised by Plaintiff (see Docket Entry 11), the ALJ failed to devote much attention to Plaintiff's ability to engage in activities of daily living as part of the credibility evaluation (see Tr. 20-25). Specifically, the ALJ made only one reference to Plaintiff's professed ability, as of July 1, 2014, to "provide himself with all essential activities of daily living." (Tr. 22; see also Tr. 595.) However, any error by the ALJ in that regard remains harmless because, as discussed above, he otherwise properly evaluated Plaintiff's subjective complaints. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); see also Johnson v. Commissioner of Soc. Sec., 535 F. App'x 498, 507 (6th Cir. 2013) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it."); Carmickle v. Commissioner, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) ("S]o long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal" (quoting Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004))).

12

- At a May 29, 2013, office visit, Plaintiff complained of gout pain in his right foot, but the physician found no clubbing, edema, erythema, warmth, swelling, or joint deformity, as well as normal peripheral pulses, range of motion, motor capability, strength, and deep tendon reflexes, and recommended that Plaintiff engage in aerobic exercise for 30 minutes three times per week (see Tr. 23; see also Tr. 500-01);

- At an October 14, 2014, blood pressure follow-up appointment, Plaintiff reported only "occasional recurrence of gout," and the physician found no clubbing or edema of Plaintiff's extremities and again recommended that Plaintiff exercise (Tr. 24; see also Tr. 677-78 (emphasis added)).

The ALJ subsequently accorded only "partial weight" to the state agency medical consultant who limited Plaintiff to light work with occasional climbing, frequent handling and fingering, and no concentrated exposure to workplace hazards. (Tr. 25; see also Tr. 90-92.) The ALJ explained that, "based on evidence received at the hearing level," the ALJ "limited [Plaintiff] to sedentary work activity with . . . modified postural, manipulative and lower extremity, and environmental limitations." (Tr. 25 (emphasis added).) Indeed, the ALJ included many restrictions in the RFC to account for Plaintiff's gout symptoms, including a limitation to sedentary work (which entails only occasional standing and walking, see 20 C.F.R. § 404.1567(a)), limitations on the use of Plaintiff's hands and feet, postural restrictions, and the need to use a cane for ambulation. (See Tr. 20.)

Notwithstanding the ALJ's analysis, Plaintiff contends that the ALJ "include[d] a summary of evidence which he appear[ed] to

13

believe support[ed] his RFC" (Docket Entry 11 at 6), but that "many of the medical facts" cited by the ALJ "militate[d] in [Plaintiff's] favor" (id.), including references to a doctor's recommendation that Plaintiff "keep his left foot elevated as much as possible" (id. at 6-7 (citing Tr. 22)), gout flares, a physician's discontinuation of Plaintiff's hydrochlorothiazide ("HCTZ") "due to frequent gout flare-ups," and Plaintiff's complaint to a treating provider of a "gout attack for the past 2 to 3 days" (id. at 7 (citing Tr. 24)). Plaintiff asserts that "[t]he Fourth Circuit was presented with a similarly constructed [ALJ] decision" (id. at 5-6), and remanded the matter because the ALJ had failed to "'indicate how any of the facts he cited show that [the claimant] did not lose consciousness two or three times daily or suffer extreme fatigue'" (id. at 6 (quoting Monroe v. Colvin, 826 F.3d 176, 189-90 (4th Cir. 2016)); see also id. at 7 ("Lack of explanation regarding functional relevance of medical facts included in decision leaves the court 'to guess about how the ALJ arrived at his conclusions on [Plaintiff's] ability to perform relevant functions.'" (quoting Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015))). Plaintiff's contentions miss the mark.

Unlike in Monroe, as described above, the ALJ's discussion of Plaintiff's gout treatment, including the ALJ's notation of findings such as no clubbing, edema, erythema, warmth, swelling, or joint deformity, as well as normal peripheral pulses, range of

14

motion, motor capability, strength, and deep tendon reflexes (see Tr. 23), support his decision not to include greater limitations in the RFC to account for Plaintiff's gout. Moreover, mere references to "gout flares" or "gout attacks" in the ALJ's discussion of the evidence do not contradict the ALJ's findings, as he determined that Plaintiff's gout qualified as a severe impairment at step two (see Tr. 18) and included many restrictions in the RFC to account for Plaintiff's gout symptoms (see Tr. 20). As to the "doctor['s] recommenda[tion] that [Plaintiff] keep his left foot elevated as much as possible" (Docket Entry 11 at 6 (citing Tr. 22)), the record demonstrates that a pain management doctor made that recommendation to alleviate Plaintiff's pain from his left great toe fracture, and not his gout pain (see Tr. 609).[7]

In short, Plaintiff's assignment of error warrants no relief.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

---

[7] Plaintiff argues that his hand-written journal, which reflects alleged gout flares from October 2014, to April 2015, demonstrates that he experienced "two to three flares per month." (Docket Entry 11 at 5 (citing Tr. 679-72).) However, Plaintiff completed his journal, the entries in which all post-date Plaintiff's date last insured, based solely on his own subjective reports of gout flares and, as discussed above, the ALJ supported with substantial evidence his decision to discount Plaintiff's subjective symptom reporting. Moreover, the objective medical evidence does not corroborate that Plaintiff experienced gout flares at a rate of two to three per month during the relevant period in this case, i.e., from January 16, 2012, to September 30, 2014. During the relevant period, Plaintiff sought treatment for his gout at approximately three-month intervals from May 2012 to May 2013 (see Tr. 454-63), reported on July 14, 2014, that he had suffered "no recent flare" of his gout (Tr. 680 (emphasis added)), did not complain of gout again until October 14, 2014 (see Tr. 677-87), and, as the ALJ recognized (see Tr. 24), reported only "occasional recurrence of gout" at that time (Tr. 677 (emphasis added)).

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

                                            /s/ L. Patrick Auld
                                               **L. Patrick Auld**
                                **United States Magistrate Judge**

May 24, 2018